UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERICO THOMPSON,

        Petitioner,

                                    CASE NO. 05-CV-71882-DT
v.                                    HONORABLE ARTHUR J. TARNOW

RAYMOND BOOKER,

        Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS</u>[1]**

I.      <u>Introduction</u>

      Michigan prisoner Derico Thompson ("Petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner is confined at the Ryan Correctional Facility in Detroit, Michigan. Petitioner was convicted of armed robbery and felony firearm following a jury trial in the Wayne County Circuit Court in 2001. He was sentenced to consecutive terms of 427 months (35 years, 7 months) to 80 years imprisonment and two years imprisonment.

      In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the great weight of the evidence, the admission of perjured testimony, the admission of hearsay testimony, prosecutorial misconduct, the verdict form, sentencing proportionality, and his confrontation rights. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

---

[1]Staff Attorney Cheryl Takacs Bell provided quality research assistance.

Thompson v. Booker
05-CV-71882-DT
Page 2 of 25

II.    Facts

      Petitioner's convictions arise from the armed robbery and shooting death of Antonio Cox

on July 12, 2000.  Petitioner's Exhibit A, which mirrors the statement of facts from his state

appellate brief, sets forth a detailed account of the relevant facts.  This Court accepts the factual

allegations contained in the habeas petition, insofar as they are consistent with the record, as

Respondent has not disputed them.  *See Bland v. California Dep't. of Corrections*, 20 F.3d 1469,

1474 (9th Cir. 1994).[2]

III.    Procedural History

      Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

Appeals raising claims concerning the sufficiency of the evidence, the great weight of the

evidence, prosecutorial misconduct (deal with a witness and vouching), the admission of

hearsay, the verdict form, and sentencing proportionality.  The Michigan Court of Appeals

affirmed Petitioner's convictions and sentence.  *People v. Thompson*, No. 237602, 2004 WL

243366 (Feb. 10, 2004) (unpublished).  Petitioner filed an application for leave to appeal with

the Michigan Supreme Court raising the same claims as well as an additional confrontation

violation (*Crawford*) claim, which was denied.  *People v. Thompson*, 471 Mich. 919, 688

N.W.2d 831 (2004).  The Michigan Supreme Court also denied Petitioner's motion for

reconsideration.  *People v. Thompson*, 472 Mich. 869, 692 N.W.2d 845 (2005).

---

[2]A copy of Petitioner's facts is included as Appendix A to this opinion.

2

Thompson v. Booker
05-CV-71882-DT
Page 3 of 25

Petitioner thereafter filed the instant petition for writ of habeas corpus asserting the

following claims:

I.      Petitioner is innocent where the government failed to satisfy and establish the
requisite evidence under the constitutional due process standard of guilt beyond a
reasonable doubt for the armed robbery and felony firearm convictions.

II.     An abuse of discretion inheres where the verdict is against the great weight of the
evidence where an innocent man has been wrongfully convicted and a proper
motion of judgment of acquittal or new trial is requested within fundamental due
process.

III.    Petitioner was denied his due process right to a fair trial where the government
knowingly presented perjured testimony evidence of jailhouse informant Ernest
Ford in exchange for a deal if he supplied truthful testimony implicating
Petitioner in crimes.

IV.     Petitioner was denied his rights to confrontation under the federal and state
constitutions and his right to a fair trial where the government was allowed to
introduce the hearsay testimony of government witness Quiana McKay over
defense objection.

V.      Petitioner's due process rights were violated upon the prosecutor's closing
argument whereby he personally vouched for the credibility of various
government witnesses.

VI.     Petitioner was denied due process of law where the trial court charge submitted to
the jury was based on two different theories of guilt, but the evidence was
insufficient to prove guilt beyond a reasonable doubt on both theories.

VII.    Petitioner is entitled to a proportionate sentence to the offense and the offender
because where the 427-month minimum term of imprisonment exceeded the
maximum minimum sentence within the 171 to 427-month sentencing guideline
range an abuse of discretion has occurred.

VIII.   Petitioner is actually innocent because the trial court and the Michigan Court of
Appeals admitted and allowed critical hearsay evidence to be introduced before
Petitioner's jury without affording him an opportunity to confront the declarant in

3

violation of his state and federal constitutional rights and pursuant to *Crawford v. Washington*, 124 S. Ct. 1354 (2002).

Respondent has filed an answer to the petition contending that it should be denied.

Petitioner has filed a reply to that answer.

IV.   Analysis

    A.   Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

    B.   Exhaustion of State Remedies

As an initial matter, Respondent contends that the petition should be dismissed because Petitioner has failed to exhaust his state court remedies as to his third habeas claim which alleges that the prosecution presented perjured testimony by Ernest Ford.  The doctrine of exhaustion of state remedies requires state prisoners to present their claims to the state courts before raising

their claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (c);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A Michigan prisoner must raise each issue he seeks to present in a federal habeas action to both

the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion

requirement. *See Mohn v. Bock*, 208 F.2d 796, 800 (E.D. Mich. 2002); *see also Hafley v.*

*Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion.

*Rust*, 17 F.3d at 160.

       This Court agrees with Respondent that Petitioner has not fairly presented his perjured

testimony claim to the state courts. Petitioner has thus failed to fully exhaust his state court

remedies as to that claim. Generally, a federal district court should dismiss a "mixed" petition

for a writ of habeas corpus, that is, one containing both exhausted and unexhausted claims,

"leaving the prisoner with the choice of returning to state court to exhaust his claims or

amending and resubmitting the habeas petition to present only exhausted claims to the district

court." *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982); *see also Rust*, 17 F.3d at 160. While the

exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a

habeas petition. *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987). For example, an

unexhausted claim may be addressed if pursuit of a state court remedy would be futile, *Witzke v.*

*Withrow*, 702 F. Supp. 1338, 1348 (W.D. Mich. 1988), or if the unexhausted claim is meritless

such that addressing it would be efficient and not offend federal-state comity. *Prather v. Rees*,

822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be

Thompson v. Booker
05-CV-71882-DT
Page 6 of 25

denied on the merits despite the failure to exhaust state court remedies). A federal district court

also has discretion in "limited circumstances" to stay a mixed habeas petition to allow a

petitioner to present his unexhausted claims to the state courts and then return to federal court on

a perfected petition. *See Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528, 1534-35 (2005).

In this case, the Court finds that the interests of justice would be best served by

adjudicating Petitioner's habeas claims. Further attempts at exhaustion in the state courts are

likely to be futile. Additionally, the unexhausted claim lacks merit and may be denied on the

merits despite the lack of exhaustion. The Court, therefore, will proceed to address Petitioner's

claims.

C.    <u>Sufficiency of the Evidence Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the prosecution

presented insufficient evidence to support his armed robbery and felony firearm convictions. In

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that

a federal court's review of a sufficiency of the evidence claim must focus on whether "after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see*

*also DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998). The Court must view this standard

through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th

Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the

substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324

n. 16.  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's

claim."  *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

To convict a defendant of armed robbery under Michigan law, the prosecution must

establish the following elements:  (1) an assault, (2) a felonious taking of property from the

victim's presence or person, (3) while the defendant is armed with a weapon described in the

statute.  *See* Mich. Comp. Laws § 750.529; *People v. Rodgers*, 248 Mich. App. 702, 707, 645

N.W.2d 294 (2001).  The elements of felony firearm under Michigan law are that the defendant

carried or possessed a firearm during the commission of, or the attempt to commit, a felony.  *See*

Mich. Comp. L. § 750.227b; *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999).

To convict a defendant under an aiding and abetting theory, the prosecution must establish that

the crime was committed by the defendant or some other person, that the defendant performed

acts or gave encouragement which aided or assisted in the commission of the crime, and that the

defendant either intended to commit the crime or knew that the principal intended to commit the

crime at the time he gave the aid or encouragement.  *See People v. Carines*, 460 Mich. 750, 757,

597 N.W.2d 130 (1999).  An aider and abettor's state a mind may be inferred from all the facts

and circumstances.  *Id*.

Applying the *Jackson* standard, the Michigan Court of Appeals found that the

prosecution presented sufficient evidence to support Petitioner's convictions, stating in relevant

part:

> Viewed in a light most favorable to the prosecution, the evidence is sufficient for
> a rational trier of fact to conclude that defendant, along with codefendant Bradley,

7

committed the crime of armed robbery.  In other words, the evidence, if believed,
showed that defendant was an active participant in the planning and execution of
the robbery.  The evidence showed that defendant and codefendant Bradley were
friends and co-workers.  There was evidence, through defendant's admissions to
Anthony Carr and Ernest Ford, that he and codefendant Bradley planned to rob
the victim of a large amount of marijuana and that, during the robbery, a struggle
ensued and he lost his wristwatch.  Testimony revealed that, on the following
morning, marijuana was observed "all over" the back of the car the defendants
used during the crime.  Further, the victim's autopsy revealed evidence of a
physical struggle, including multiple abrasions on the victim's knuckles, knees,
and left shoulder.  A wristwatch was found at the scene, and DNA testing
revealed that defendant could not be excluded as an owner of the watch.
Defendant's girlfriend identified the watch found at the scene as being similar to
one she previously purchased for defendant.  Also, according to Carr and Crystal
Rickman, while in jail, defendant sent messages to Brown instructing her to deny
buying him a watch.  Brown confirmed that she received a message from
defendant.  Additionally, Ford testified that defendant said that the victim was
shot four or five times and that, after the crime, codefendant Bradley painted the
car blue.  Independent physical evidence corroborated these statements.

Although defendant asserts that the evidence connecting him to the crime was
weak, the jury was entitled to accept or reject any of the evidence presented....
Moreover, this Court will not interfere with the jury's determination of the weight
of the evidence or the credibility of the witnesses....  In sum, the evidence is
sufficient to enable a rational jury to reasonably conclude beyond a reasonable
doubt that defendant participated in the armed robbery as either a principal or an
aider and abettor.

*Thompson*, 2004 WL 243366 at *2 (citations omitted).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

nor an unreasonable application thereof.  The prosecution presented sufficient evidence that

Petitioner participated in the armed robbery of Antonio Cox with Anthony Vincent Bradley.  In

particular, the evidence of Petitioner's relationship with Bradley, Bradley's statements to Quiana

McKay, Petitioner's admissions to Anthony Carr and Ernest Ford, the marijuana found near the

Thompson v. Booker
05-CV-71882-DT
Page 9 of 25

scene and in the car, the repainting of the car, the fact that a watch thought to be Petitioner's was found at the scene, and Petitioner's attempts to hide the fact that his girlfriend bought him a watch provided sufficient direct and circumstantial evidence to establish Petitioner's guilt of armed robbery.

To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded certain pieces of evidence, he is not entitled to relief. It is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). Habeas relief is not warranted on this claim.

D.     Great Weight of the Evidence Claim

Petitioner relatedly asserts that the jury's verdict was against the great weight of the evidence. However, a federal habeas court has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised. *See Griggs v. State of Kansas*, 814 F. Supp. 60, 62 (D. Kan. 1993). As discussed *supra*, such is not the case in this instance. Habeas relief is not warranted on this

claim.

    E.    <u>Perjured Testimony Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented perjured testimony from Ernest Ford.  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false.  *See Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998) (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).  The burden is on the defendant to show that the testimony was actually perjured.  *Id.*  Furthermore, the knowing use of false or perjured testimony constitutes a denial of due process only "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Coe,* 161 F.3d at 343.  This standard is equivalent to the *Chapman v. California*, 386 U.S. 18, 24 (1967), "harmless beyond a reasonable doubt" standard.  *See United States v. Bagley*, 473 U.S. 667, 679, n. 9 (1985).

Petitioner has failed to demonstrate that Ford's testimony was false or that the prosecution knowingly presented false testimony.  While Petitioner challenges the veracity of Ford's testimony, he has failed to set forth facts which establish that the witness testified falsely or that the prosecution knew of any such false testimony.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998).  Petitioner has also not shown that the prosecution knowingly

Thompson v. Booker
05-CV-71882-DT
Page 11 of 25

presented false testimony.  Habeas relief is therefore not warranted on this claim.

F.      Hearsay Testimony/Confrontation Claims

Petitioner also asserts that he is entitled to habeas relief because the trial court admitted hearsay testimony in violation of state law and his federal confrontation rights, including his rights under *Crawford v. Washington*, 541 U.S. 36 (2004).  Specifically, Petitioner objects to the admission of Quiana McKay's statements to police and to McKay's testimony recounting statements co-defendant Bradley made to her shortly after the incident which implicated Petitioner in the crime.

1.      Confrontation Issues

Petitioner first appears to allege that his confrontation rights were violated by the admission of Quiana McKay's police statements.  The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."  U.S. Const. amend. VI.  The Confrontation Clause is not violated, however, when a declarant who made challenged hearsay statements testifies at trial and is available for the defendant to confront.  *See Nelson v. O'Neil*, 402 U.S. 622, 626-27, 629-30 (1971); *California v. Green*, 399 U.S. 149, 161 (1970) ("none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial").  Quiana McKay testified at trial and Petitioner had the opportunity to cross-examine her about the statements that she made to the police and the events at issue.  Thus, the admission of McKay's prior statements to police did not violate the

11

Thompson v. Booker
05-CV-71882-DT
Page 12 of 25

Confrontation Clause.

Petitioner also asserts that his confrontation rights were violated by the admission of co-defendant Bradley's statements to Quiana McKay, which implicated Petitioner in the crime, because Bradley did not testify at trial and was not subject to cross-examination.  The Confrontation Clause provides criminal defendants the right to confront and cross-examine witnesses against them.  *See, e.g., Davis v. Alaska*, 415 U.S. 308, 315 (1973).  The constitutional right to confront adverse witnesses generally prevents a court from admitting an out-of-court statement against a criminal defendant.  *See Green*, 399 U.S. at 155-58; *see also Bruton v. United States*, 391 U.S. 123, 126 (1968) (holding that the admission at a joint trial of a co-defendant's confession to police which implicates the defendant violates the Confrontation Clause).  The Sixth Amendment protections are not so broad, however, as to exclude the admission of all hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial.  *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990).  The constitutionality of the admission of a hearsay statement depends on whether the statement is testimonial or non-testimonial in nature and on the circumstances surrounding the making of the statement.

In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the *testimonial* statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.  The proper inquiry for deciding whether a statement is testimonial is

12

"whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005). In *Crawford*, the Supreme Court ruled that testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations. *Crawford*, 541 U.S. at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id*. at 51-52, 56.

In this case, the statements made by co-defendant Bradley to his girlfriend, Quiana McKay, are non-testimonial in nature. Thus, contrary to Petitioner's assertion, *Crawford* is inapplicable to the case at hand. Rather, the proper inquiry governing the admissibility of Bradley's non-testimonial hearsay statements is that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). *See United States v. Franklin*, 415 F.3d 537, 546 (6th Cir. 2005); *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005) ("*Crawford*" dealt only with testimonial statements and did not disturb the rule that non-testimonial statements are constitutionally admissible if they bear independent guarantees of trustworthiness."). Under *Roberts*, when a hearsay declarant is unavailable for cross-examination at trial, his or her non-testimonial statement can be admitted if it falls within a firmly-rooted hearsay exception to the hearsay rule, or if it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Roberts*, 448 U.S. at 66.

The Michigan Court of Appeals concluded that Petitioner's rights were not violated by

the admission of Bradley's statements because those statements were properly admitted as

statements against penal interest and they bore adequate indicia of reliability.  The court stated,

in relevant part:

> Here, the statements attributed to codefendant Bradley, although hearsay, were
> admissible as statements against his penal interest under MRE 804(b)(3).  First,
> insofar that he implicated himself in the crime of armed robbery, the statements
> were clearly against his penal interest.  Also, a reasonable person in codefendant
> Bradley's position would not have made the incriminating statements unless he
> believed they were true, especially considering his admission that both he and
> defendant were involved in the crime.  Additionally, his statement that both he
> and defendant robbed the victim of marijuana comported with the evidence that,
> after the incident, marijuana was found in his girlfriend's car and that defendant's
> watch was found at the scene.
>
> Furthermore, considering the totality of the circumstances in this case,
> codefendant Bradley's statements possessed sufficient indicia of reliability to be
> admitted against defendant, despite his inability to cross-examine him.
> Codefendant Bradley made the statements to McKay, his live-in girlfriend, when
> he returned home after being shot.  Although McKay asked codefendant Bradley
> what happened, arguably prompting the discussion, he voluntarily answered in a
> narrative form, while in a non-custodial environment.  Also, the statements did
> not minimize codefendant Bradley's role in the armed robbery or shift the blame
> solely onto defendant. Additionally, there is nothing in the record suggesting that
> the statements were made to avenge codefendant Bradley or to curry favor, or that
> codefendant Bradley had a motive to lie or distort the truth when talking to
> McKay.  Also, the statements were made within hours of the incident.  To hold
> that the statements were not sufficiently trustworthy would require this Court to
> conclude that codefendant Bradley was attempting to deceive McKay, even
> though he implicated himself in the crime, and there was no factual support for
> that conclusion.
>
> In sum, the trial court did not abuse its discretion by concluding that codefendant
> Bradley's statements were within the scope of MRE 804(b)(3), and contained
> "particularized guarantees of trustworthiness" considering the totality of the
> circumstances to allow their admission as substantive evidence against defendant
> without violating his right of confrontation.

Thompson v. Booker
05-CV-71882-DT
Page 15 of 25

*Thompson*, 2004 WL 243366 at *7.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  While the statement-against-penal-interest exception to the hearsay rule may not be firmly-rooted for confrontation purposes, *see Franklin*, 415 U.S. at 545, Bradley's statement to McKay nonetheless bore particularized guarantees of trustworthiness so as to justify its admission.  Bradley's statement was non-testimonial in nature, was made to his live-in girlfriend at home, was self-inculpatory, was voluntary (though prompted by her asking how he had been shot), was stated in a narrative form, and was made shortly after the crime.  Given these circumstances, the Court concludes that Bradley's statement was sufficiently reliable and had particularized guarantees of trustworthiness under *Roberts* such that its admission did not violate Petitioner's confrontation rights.  *See Jackson v. Renico*, 179 Fed. Appx. 249, 254-55 (6th Cir. 2006) (applying the *Roberts* standard and concluding that the admission of a co-defendant's statement to a mutual friend, which implicated the defendant in the crime, did not violate the Confrontation Clause); *Scott v. Jamrog*, No. 03-73737, 2006 WL 2811270, *8-10 (E.D. Mich. Sept. 28, 2006) (same).  Habeas relief is therefore not warranted on this claim.

2.     State Law Evidentiary Issues

Petitioner also appears to allege that the admission of the disputed hearsay testimony violated the Michigan Rules of Evidence.  However, it is well-established that alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for

15

federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan*

*Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so

egregious that it results in a denial of fundamental fairness," may it violate due process and

warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Such is not the case here.  Petitioner has not established that the state courts erred under

Michigan law.  The police testimony detailing Quiana McKay's statement to police was properly

admitted to impeach and clarify her testimony regarding that statement.  Additionally, as

discussed by the Michigan Court of Appeals, co-defendant Bradley's statements to Quiana

McKay were properly admitted pursuant to Michigan Rule of Evidence 804(b)(3) as statements

against penal interest.  *See Thompson*, 2004 WL 243366 at *5-7.  Petitioner has not shown that

the state courts erred as a matter of state law or that the evidentiary rulings violated due process.

Habeas relief is not warranted on such a basis.

G.     Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor vouched

for the credibility of witnesses Ernest Ford, Quiana McKay, Jennifer Brown, Crystal Rickman,

and Anthony Carr.  Respondent contends that these claims are barred by procedural default

and/or lack merit.

1.     Procedural Default

Procedural default is not a jurisdictional bar to a review of the merits of a habeas petition.

*See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Trest v. Cain*, 522 U.S. 87, 89

(1997)).  Consequently, a federal court is not required to address a procedural default issue before ruling against a habeas petitioner on the merits of his claims.  When a procedural default issue presents a more complicated question and is unnecessary to the disposition of the case, a court may proceed directly to the merits of the petitioner's claims in the interest of judicial economy.  *See Lambrix v. Singleterry*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1089 (E.D. Mich. 2004); *see also Strickler v. Green*, 527 U.S. 263, 282 (1999) (considering merits of habeas claims where such inquiry mirrored procedural default cause and prejudice inquiry); *Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004) (same).

In the present case, resolving the procedural default issue will be more complex than deciding the substantive prosecutorial misconduct claims on habeas review and will require some consideration of the merits of those claims.  Accordingly, in the interests of judicial economy, the Court will address the merits of Petitioner's prosecutorial misconduct claims without ruling on the procedural default issue.

2.    Merits

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The reviewing court's focus is

17

Thompson v. Booker
05-CV-71882-DT
Page 18 of 25

on "'the fairness of the trial, not the culpability of the prosecutor.'"  *Pritchett v. Pitcher*, 117

F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*, 4 F.3d at 1355).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for

determining whether prosecutorial misconduct violates a defendant's due process rights.  *See*

*Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must

determine whether the challenged statements were indeed improper.  *Id*. at 452.  Upon a finding

of impropriety, the court must decide whether the statements were flagrant.  *Id.*  Flagrancy is

determined by an examination of four factors:  1) whether the statements tended to mislead the

jury or prejudice the accused; 2) whether the statements were isolated or among a series of

improper statements; 3) whether the statements were deliberately or accidentally before the jury;

and 4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle v. Million*, 201

F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir.

1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so

pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as

probably to prejudice the defendant.'"  *Pritchett*, 117 F.3d at 964 (citations omitted).

Petitioner first asserts that the prosecution improperly vouched for the credibility of

Ernest Ford by referencing the truthfulness requirements of his plea agreement.  It is well-settled

that it is improper for a prosecutor to express his or her own personal beliefs and opinions

concerning the credibility of a witness.  *See United States v. Young*, 470 U.S. 1, 9-10 (1985);

*United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).  Such statements are improper

18

Thompson v. Booker
05-CV-71882-DT
Page 19 of 25

because they can convey the impression that the prosecutor has evidence not presented to the

jury which supports the charge against the defendant thereby infringing upon the defendant's

right to be judged solely based upon the evidence presented and because the prosecutor's opinion

carries with it the imprimatur of the Government and may induce the jury to trust the

Government's judgment rather than its own.  *See United States v. White*, 58 Fed. Appx. 610, 617-

18, 2003 WL 152314, *7 (6th Cir. 2003) (citing cases).

Improper vouching may occur when a prosecutor argues that a witness testifying

pursuant to a plea agreement is in jeopardy if the court or government does not find his or her

testimony to be truthful.  *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994).  A

prosecutor, however, does not engage in misconduct by referring to a testifying witness' plea

agreement, by eliciting testimony about the agreement's terms, or by referencing the agreement

to deflect the defendant's use of the agreement to attack the witness' credibility.  *United States v.

Francis*, 170 F.3d 546, 550 (6th Cir. 1999).  The potential for impropriety only emerges when a

prosecutor explains that there is to be a recommendation to the sentencing court whether the

terms of the plea agreement have been adhered to because it is easy for the prosecutor to imply

that he or she is in a special position to ascertain whether the witness is testifying truthfully.  *Id.*

(citing *Carroll*, 26 F.3d at 1387).

In reviewing this issue for plain error, the Michigan Court of Appeals concluded that the

prosecutor merely inquired about the scope of Ford's plea agreement and did not indicate that he

had special knowledge about the truthfulness of Ford's testimony.  The court further found that

19

Thompson v. Booker
05-CV-71882-DT
Page 20 of 25

the prosecutor permissibly argued that the evidence and Ford's demeanor supported a finding

that Ford's testimony was credible.  *See Thompson*, 2004 WL 243366 at *4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

nor an unreasonable application of the law or the fact.  The record shows that the prosecutor

elicited testimony about Ford's plea agreement as a means of explaining how he came to testify

against Petitioner.  The plea agreement was relevant to his credibility.  The prosecutor did not

argue that he had any special knowledge of Ford's truthfulness.  Rather, he argued that Ford's

testimony was credible based upon his demeanor, the substance of his testimony, and the other

evidence presented at trial.  The prosecutor's arguments were based upon reasonable inferences

from the evidence.  It is well-settled that a prosecutor has leeway to argue reasonable inferences

from the evidence.  *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Additionally, a

prosecutor may argue from the facts that a witness is or is not worthy of belief.  *See, e.g,*

*Portuondo v. Agard*, 529 U.S. 61, 69 (2000).  The prosecutor did not impermissibly vouch for

Ford's credibility nor express a personal belief in Petitioner's guilt.  The prosecutor's comments

were appropriate and did not render the trial fundamentally unfair.

Petitioner also asserts that the prosecutor improperly vouched for McKay's credibility by

stating that "the police knew that [she] wasn't involved with this homicide."  The Michigan

Court of Appeals agreed that this comment was improper but found that the trial court took

appropriate curative action by striking the remark and instructing the jury to disregard it.  The

court further noted that the prosecutor did not pursue the matter further and that the trial court

20

Thompson v. Booker
05-CV-71882-DT
Page 21 of 25

subsequently instructed the jury that it was not to consider any stricken testimony. *See*

*Thompson*, 2004 WL 243366 at *4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

nor an unreasonable application of the law or the facts. The record reveals that the prosecutor's

improper remark was stricken and that the trial court instructed the jury to disregard it. Jurors

are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66

(1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow

it."). Petitioner has not shown that the stricken comment rendered his trial fundamentally unfair.

Lastly, Petitioner asserts that the prosecutor vouched for the credibility of Brown,

Rickman, and Carr during rebuttal argument. In reviewing this issue for plain error, the

Michigan Court of Appeals concluded that the prosecutor properly argued from the evidence that

the testimony of those witnesses was credible. Additionally, the court noted that the

prosecution's comments in rebuttal were made in response to defense counsel's statements

closing arguments that the witnesses were not worthy of belief. The court further found that the

trial court's instructions that the jury is to determine witness credibility and that the attorneys'

comments are not evidence cured any perceived prejudice. *See Thompson*, 2004 WL 243366 at

*5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

nor an unreasonable application of the law or the fact. The record shows that the prosecutor

properly argued that the witnesses were credible based upon the substance of their testimony, as

21

Thompson v. Booker
05-CV-71882-DT
Page 22 of 25

well as the other evidence presented at trial.  Under such circumstances, the prosecutor's

arguments were proper and did not render the trial fundamentally unfair.  Habeas relief is not

warranted on this claim.

      H.    <u>General Verdict Form Claim</u>

      Petitioner next asserts that he is entitled to habeas relief because the trial court submitted

a general verdict form to the jury although the prosecution presented alternative theories of guilt

(principal or aider and abettor) to the jury and there was insufficient evidence to find him guilty

as an aider and abettor.

      After concluding that the prosecution presented sufficient evidence to support

Petitioner's convictions as a principal or as an aider and abettor, the Michigan Court of Appeals

also denied relief on this claim, stating in relevant part:

> [A] prosecutor may properly proceed on alternative theories that a defendant is
> guilty either as a principal or as an aider and abettor....   Moreover, as plaintiff
> correctly notes in its brief, where the prosecutor presents sufficient evidence of
> the defendant's guilt as either a principal or an aider and abettor, the defendant's
> right to a unanimous verdict is not violated by a general verdict of guilty without
> the jury's specification on which alternative theory it relied.

*Thompson*, 2004 WL 243366 at *3 (citations omitted).

      This decision is neither contrary to Supreme Court precedent nor an unreasonable

application thereof.  While Michigan law provides a right to a unanimous verdict in criminal

cases, there is no federal constitutional right to a unanimous verdict in criminal cases.  *See*

*Apodaca v. Oregon*, 406 U.S. 404, 406 (1972) (state court conviction of crime by less than

unanimous jury does not violate right to trial by jury specified by Sixth Amendment).  In *Schad*

22

*v. Arizona*, 501 U.S. 624 (1991), the United States Supreme Court held that a conviction under

an instruction that did not require the jury to unanimously agree upon one of the alternative

theories of premeditated murder and felony murder did not constitute a denial of due process.

The Court explained that it had "never suggested that in returning general verdicts in such cases

the jurors should be required to agree upon a single means of commission."  *Id.* at 631; *see also*

*Griffin v. United States*, 502 U.S. 46, 56 (1991) (a general jury verdict is valid if sufficient

evidence supports one of the grounds for conviction, so long as the other submitted grounds are

neither illegal nor unconstitutional, but merely unsupported by the evidence); *Rogers v. Howes*,

64 Fed. Appx. 450, 454 (6th Cir. 2003) (citing *Schad* in ruling that a jury is not required to agree

upon a theory of guilt).  Petitioner's federal rights were thus not violated by the jury's return of a

general verdict of guilty even though the prosecution presented alternate theories of guilt.

Furthermore, as discussed *supra*, the prosecution presented sufficient evidence to convict

Petitioner as either a principal or as an aider and abettor in this case.  Habeas relief is not

warranted on this claim.

     I.     <u>Sentencing Claim</u>

     Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court

imposed a disproportionate sentence at the high end of the guideline range.  Claims arising out of

a state court's sentencing decision are not normally cognizable on habeas review, unless the

petitioner can show that the sentence imposed exceed the statutory limits or is wholly

unauthorized by law.  *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  To the

Thompson v. Booker
05-CV-71882-DT
Page 24 of 25

extent that Petitioner asserts that his sentence is disproportionate under state law, he fails to state

a claim for federal habeas relief.  *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing

*Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  There is also no federal constitutional right to

individualized sentencing.  *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Habeas relief does not lie for perceived errors of state law.  *See, e.g., Estelle*, 502 U.S. at 67-68.

State courts are the final arbiters of state law and the federal courts will not intervene in such

matters.  *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).

Petitioner is also not entitled to relief on any claim that his sentence constitutes cruel and

unusual punishment under the Eighth Amendment.  The United States Constitution does not

require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*,

501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).

"Consequently, only an extreme disparity between crime and sentence offends the Eighth

Amendment."  *Marks*, 209 F.3d at 583.  A sentence that falls within the maximum penalty

authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*,

213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  "Federal

courts will not engage in a proportionality analysis except in cases where the penalty imposed is

death or life in prison without possibility of parole."  *Thomas*, 49 F.3d at 261.  Petitioner was

sentenced to 427 months (35 years, 7 months) to 80 years imprisonment on his armed robbery

conviction.  That sentence was within the guideline range, as well as the statutory maximum of

life imprisonment.  *See* Mich. Comp. L. § 750.529.  The trial court acted within its discretion in

Thompson v. Booker
05-CV-71882-DT
Page 25 of 25

imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence

so as to offend the Eighth Amendment.  Habeas relief is not warranted on this claim.

V.   <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  December 1, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record/parties
on December 1, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary

25